Lincoln D. Bandlow, Esq. (CA #170449)
Lincoln@BandlowLaw.com
**Law Offices of Lincoln Bandlow, PC**
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Phone: (310) 556-9680
Fax: (310) 861-5550

Attorney for Plaintiff Tony Kelly

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY KELLY, an individual<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>JOEL ALVAREZ, an individual; THE BLACK TAPE PROJECT, LLC, a Florida limited liability company, ALL FAMOUS HOLDINGS, INC., a New Jersey corporation,<br><br>　　　　　Defendants. | Case Number:<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT - DEMAND FOR JURY TRIAL** |

Plaintiff TONY KELLY ("KELLY" or "Plaintiff") brings this complaint against Defendants JOEL ALVAREZ ("ALVAREZ"), THE BLACK TAPE PROJECT, LLC ("BTP"), and ALL FAMOUS HOLDINGS, INC., ("ALL FAMOUS" and, together with ALVAREZ and BTP, "Defendants"), and alleges as follows:

## Introduction

1.  This is an action for copyright infringement under the Copyright Act, 17 U.S.C. § 101, et seq., and for infringement of Plaintiff's moral rights of attribution and integrity under the Visual Artists Rights Act of 1990, 17 U.S.C.

1. § 106A, seeking injunctive relief and damages as provided by applicable law.

2. Plaintiff is a critically acclaimed and globally renowned fine art and fashion photographer.

3. Defendants repeatedly used numerous of Plaintiff's photographs, without permission, license or authority, to advertise and profit from private, ticketed dinners and parties they hosted in Los Angeles and Miami.

4. In 2013, Plaintiff published the photograph titled "HOLLYWOOD HILLS," which was subsequently offered for sale in limited editions and registered with the United States Copyright Office on September 20, 2024.

5. In 2016, Plaintiff published the photograph titled "BANKING," which was taken in Los Angeles, California and registered with the United States Copyright Office on October 2, 2024.

6. In September 2016, Plaintiff published the photographs "LOVE STORY 1", "LOVE STORY 2" and "LOVE STORY 5" which were taken in Beverly Hills, California and registered with the United States Copyright Office on October 3, 2024.

7. In October 2016, Plaintiff published a photobook titled "Taken!: Entertaining Nudes" that included the photograph "ROOFTOP 2," which was registered with the United States Copyright Office on December 19, 2024.

8. In May 2018, Plaintiff published a photograph titled "STEP IN," which was taken in Los Angeles, California and registered with the United States Copyright Office on December 19, 2024.

9. In June 2022, Plaintiff published photographs titled "SUPER SLIM" and "BREAK UP" which were subsequently offered for sale in limited editions and registered with the United States Copyright Office on September 23, 2024.

10. In 2024, Plaintiff published a photograph titled "LA DOLCE VITA," which was registered with the United States Copyright Office on October 1, 2024.

11. In 2024, Plaintiff published a photograph titled "HOUSE ARREST"

1. which was registered with the United States Copyright Office on September 17, 2025.

12. Beginning on or around September 10, 2024, Defendants ALVAREZ and BTP posted copies of "HOLLYWOOD HILLS," "BANKING," "LOVE STORY 1," "LOVE STORY 2," "ROOFTOP 2," "STEP IN," "SUPER SLIM," "BREAK UP," "LA DOLCE VITA" and "HOUSE ARREST" (collectively, the "Copyrighted Photographs") to five Instagram accounts and a website (all of which, upon information and belief, are controlled and operated by ALVAREZ and BTP) to advertise a private ticketed dinner and party in held Los Angeles on October 30, 2024 (the "Los Angeles Event"), and in Miami on December 4, 2024 (the "Miami Event").

13. Beginning on or around September 14, 2024, Defendant ALL FAMOUS posted a copy of "STEP IN" to its official Instagram account to advertise the Los Angeles Event.

14. At no time did Plaintiff grant Defendants authority or license to use the Copyrighted Photographs, or any other work, to advertise their commercial venture or for any other purpose.

## Jurisdiction and Venue

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (jurisdiction over copyright actions).

16. This Court has general personal jurisdiction over Defendants because Defendants have engaged in substantial, continuous and systematic business contacts in California so as to render them at home in the state. Defendants regularly advertise to California residents, solicit business from California residents and host ticketed events in California.

17. This Court also has specific personal jurisdiction over Defendants because Defendants purposefully directed their activities at California, Defendants

purposefully availed themselves of the privilege of conducting activities in California, the claims arise out of Defendants' California-related activities, and the exercise of jurisdiction is reasonable.

18. Defendants posted to Instagram numerous advertisements expressly aimed and directed at California residents for a private dinner and party held in Los Angeles in October 2024, and which cost between $2,000 and $6,000 per ticket.

19. These Instagram posts included copies of the Copyrighted Photographs thereby infringing on Plaintiff's copyright and giving rise to these claims.

20. Plaintiff is based in Los Angeles and, therefore, the harm caused by the infringing posts has been, and continues to be, suffered in California.

21. Accordingly, Defendants have used Plaintiff's Copyrighted Photographs as part of their deliberate exploitation of the California market for their own commercial gain.

22. Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this District because: (i) a substantial part of the events or omissions giving rise to the claims occurred in this District; and (ii) the Defendants reside or may be found in this District. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because Defendants or Defendants' agent reside or may be found in this District.

## Parties

23. Plaintiff KELLY is a fine art and fashion photographer residing in West Hollywood, California.

24. Defendant ALVAREZ is an individual residing at 5310 SW 96th Street, Miami, Florida 33165. ALVAREZ is the CEO and registered agent for Defendant BTP.

25. Defendant BTP is a Florida limited liability company with its principal place of business located at 5310 SW 96th Street, Miami, Florida 33165.

26. Upon information and belief, Defendant ALL FAMOUS is a New Jersey corporation with its principal place of business located at 100 Sharp Road, Marlton, New Jersey 08053.

## Factual Background

### *Plaintiff's Copyrighted Photographs*

27. Plaintiff is a critically acclaimed fashion and fine art photographer respected globally for his cinematic, stylish and subversive aesthetic that emphasizes bold, vivid colors and glossy finish.

28. Over his three-decade career, Plaintiff's award-winning photographs have appeared in numerous high-profile publications, including *Vanity Fair*, *Vogue*, *GQ*, *Playboy* and *L'Officiel*.

29. Plaintiff has also shot for high-end brands including MAC Cosmetics, Louis Vuitton, Campari, BMW and American Apparel, as well as celebrities including Snoop Dogg, Bruno Mars, Emily Ratajkowski, Demi Lovato and Justin Bieber.

30. In 2013, Plaintiff created, composed and shot the photograph titled "Hollywood Hills." The photograph depicts a blonde, nude model in soft focus lying prone in the foreground with her legs bent at the knees and feet pointed upward while wearing red high-heeled shoes. The "Hollywood" sign, in front of a clear blue sky, is in sharp focus in the background. A true and correct copy of the photograph "Hollywood Hills" is attached to the Complaint as **Exhibit 1**.

31. Plaintiff published "Hollywood Hills" in 2013 and offered 45 signed and numbered limited editions for sale. The photograph is one of Plaintiff's most famous.

32. Plaintiff owns the copyright to "Hollywood Hills," and, on September 20, 2024, Plaintiff registered "Hollywood Hills" with the United States

1  Copyright Office. A true and correct copy of the Certificate of Registration for
2  "Hollywood Hills" is attached to the Complaint as **Exhibit 2**.
3     33.    In 2016, Plaintiff created, composed, shot and published the
4  photograph "BANKING" in Los Angeles, California. The photograph depicts a
5  nude model in red high heels with her right hand on her hip and facing away from
6  the camera while holding a bundle of cash in front of more cash stacked on the
7  ground. A true and correct copy of the photograph "BANKING" is attached to the
8  Complaint as **Exhibit 3**.
9     34.    Plaintiff owns the copyright to "BANKING" and, on October 2,
10 2024, Plaintiff registered "BANKING" with the United States Copyright Office.
11 A true and correct copy of the Certificate of Registration for "BANKING" is
12 attached to the Complaint as **Exhibit 4**.
13     35.    In 2016, Plaintiff created, composed, shot and published the
14 photographs "LOVE STORY 1", "LOVE STORY 2" and "LOVE STORY 5" in
15 Beverly Hills, California. "LOVE STORY 1" depicts a nude model in black high
16 heels sitting at table across from a Star Wars storm trooper on a terrace
17 overlooking Los Angeles. "LOVE STORY 2" depicts a nude model in black high
18 heels dancing with a Star Wars storm trooper on a terrace overlooking Los
19 Angeles. "LOVE STORY 5" depicts a nude model in black high heels arm-in-arm
20 with a Star Wars storm trooper overlooking the Los Angeles. True and correct
21 copies of the photographs "LOVE STORY 1", "LOVE STORY 2" and "LOVE
22 STORY 5" are attached to the Complaint as **Exhibit 5, Exhibit 6** and **Exhibit 7**,
23 respectively.
24     36.    Plaintiff owns the copyrights to "LOVE STORY 1", "LOVE STORY
25 2" and "LOVE STORY 6" and registered the three photographs with the United
26 States Copyright Office on October 3, 2024. A true and correct copy of the
27 Certificate of Registration for "LOVE STORY 1", "LOVE STORY 2" and
28 "LOVE STORY 5" is attached to the Complaint as **Exhibit 8**.

Complaint – Demand for Jury Trial

37. In January 2016, Plaintiff created, composed and shot the photograph titled "ROOFTOP 2." The photograph depicts two nude models standing close to each other on a rooftop. Both models are wearing red high heels, and one is holding a red and white colored bullhorn. A true and correct copy of the photograph "ROOFTOP 2" is attached to the Complaint as **Exhibit 9**.

38. Plaintiff published "ROOFTOP 2" in October 2016 as part of a photo book titled "Taken!: Entertaining Nudes."

39. Plaintiff owns the copyright to "ROOFTOP 2" and, on December 19, 2024, Plaintiff registered "ROOFTOP 2" with the United States Copyright Office. A true and correct of the Certificate of Registration for "ROOFTOP 2" is attached to the Complaint as **Exhibit 10**.

40. In 2018, Plaintiff created, composed and shot the photograph "STEP IN" in Los Angeles. The photograph depicts one male and one female model from the knees down. The woman is facing the man, wearing red and black heels with one leg lifted at an angle. The man is wearing pants and black loafers with red roses on top. A true and correct copy of the photograph "STEP IN" is attached to the Complaint as **Exhibit 11**.

41. Plaintiff owns the copyright to "STEP IN" and, on December 19, 2024, Plaintiff registered "STEP IN" with the United States Copyright Office. A true and correct copy of the Certificate of Registration for "STEP IN" is attached to the Complaint as **Exhibit 12**.

42. In 2022, Plaintiff created, composed and shot the photograph "SUPER SLIM." The photograph depicts an inverted red, high-heeled shoe and a female model with red lipstick lighting a cigarette from a flame protruding from the point of the heel. Plaintiff published "SUPER SLIM" in June 2022 and offered 75 signed and numbered limited editions for sale. A true and correct copy of the photograph "SUPER SLIM" is attached to the Complaint as **Exhibit 13**.

43. In 2022, plaintiff created, composed and shot the photograph

"BREAKUP." The photograph depicts a woman's foot in a red high-heeled shoe appearing to smash a pile of men's watches. A true and correct copy of the photograph "BREAKUP" is attached to the Complaint as **Exhibit 14**.

44. Plaintiff owns the copyright to "SUPER SLIM" and "BREAKUP," and, on September 23, 2024, Plaintiff registered "SUPER SLIM" and "BREAKUP" with the United States Copyright Office. A true and correct copy of the Certificate of Registration for "SUPER SLIM" and "BREAK UP" is attached to the Complaint as **Exhibit 15**.

45. In 2024, Plaintiff created, composed and shot the photograph "LA DOLCE VITA." The photograph depicts a topless model facing away from the camera reaching for a martini held just out of reach by a smiling waiter, while another model watches from her lounge chair. A true and correct copy of the photograph "LA DOLCE VITA" is attached to the Complaint as **Exhibit 16**.

46. Plaintiff owns the copyright to "LA DOLCE VITA" and, on October 1, 2024, Plaintiff registered "LA DOLCE VITA" with the United States Copyright Office. A true and correct copy of the Certificate of Registration for "LA DOLCE VITA" is attached to the Complaint as **Exhibit 17**.

47. In 2024, Plaintiff created, composed and shot the photograph "HOUSE ARREST." The photograph depicts two women in black bathing suits with ankle monitors on their right legs as they look at a yacht. A true and correct copy of the photograph "HOUSE ARREST" is attached to the Complaint as **Exhibit 18**.

48. Plaintiff owns the copyright to "HOUSE ARREST" and, on September 17, 2025, Plaintiff registered "HOUSE ARREST" with the United States Copyright Office. A true and correct copy of the Certificate of Registration for "HOUSE ARREST" is attached to the Complaint as **Exhibit 19**.

*Defendants Are Using the Copyrighted Photographs Without Plaintiff's Authorization to Advertise Their Ticketed Events*

49. Defendants ALVAREZ and BTP own and operate the Black Tape Project, a commercial venture that hosts fashion shows, parties and dinners.

50. These events promote and celebrate a fashion "aesthetic" that uses body tape to create designs on the nude bodies of (almost exclusively young female) models.

51. The "aesthetic" was developed and promoted by Defendant ALVAREZ, a self-described "designer" and "body tape expert."

52. The Black Tape Project also offers a $10,000 apprenticeship program for aspiring "body tape experts," and sells body tape, accessories and other merchandise on its website.

53. On October 30, 2024, Defendants hosted a private dinner and party in the Los Angeles area titled "Nothing But Heels" (the "Los Angeles Event").

54. Upon information and belief, the Event was sponsored by Defendant ALL FAMOUS.

55. The Event was billed as a "seductive art show, private dinner and provocative performance event that will be the most exclusive and tantalizing event of the season." Defendants also advertise that "gourmet cuisine and desserts will be served on the bodies of the models" who will be "wearing nothing but heels." Defendants also promise "erotic performances, too bold to disclose here." Tickets for the Event cost between $2,000 and $6,000.

56. On December 4, 2024, Defendants hosted a similar private dinner and party in the Miami area titled "Nothing But Heels" (the "Miami Event").

57. At no time did Defendants request from Plaintiff, and at no time did Plaintiff grant the Defendants, or anyone else, permission or license to use Plaintiff's Copyrighted Photographs, or any other work, in connection with the Events or for any other purpose.

58. Nonetheless, beginning on or around September 10, 2024, Defendants ALVAREZ and BTP posted advertisements on five Instagram accounts that they operate and control that included copies of the Copyrighted Photographs.

59. Beginning in or about September 2024, Instagram accounts titled "thenothingbutheels and blacktape project", "thekingoftape," "blacktapedragons" and "Drakhan Blackhart" posted copies of "ROOFTOP 2" ("Infringing Rooftop Posts"). A true and correct copy of the Infringing Rooftop Posts is attached to the Complaint as **Exhibit 20**.

60. Beginning in or about September 2024, the Instagram accounts titled "allfamousofficial," "blacktapeproject," and "thenothingbutheels" posted a copy of "STEP IN" ("Infringing Step In Posts"). A true and correct copy of the Infringing Step In Posts is attached to the Complaint as **Exhibits 21**.

61. Beginning in or about September 2024, the Instagram accounts titled "blacktapeproject" and "thenothingbutheels" posted a copy of "Hollywood Hills" ("Infringing Hollywood Hills Posts"). A true and correct copy of the Infringing Hollywood Hills Posts are attached to the Complaint as **Exhibits 22**.

62. Beginning in or around September 2024, the Instagram accounts "thenothingbutheels" and "blacktapeproject" posted a copy of "BANKING" ("Infringing Banking Posts"). A true and correct copy of the Infringing Banking Posts is attached to the Complaint as **Exhibit 23**.

63. Beginning in or around September 2024, the Instagram Accounts "blacktapeproject" and "thenothingbutheels" posted a copy of "LOVE STORY 1" ("Infringing Love Story 1 Posts"). A true and correct copy of the Infringing Love Story 1 Posts is attached to the Complaint as **Exhibit 24**.

64. Beginning in or around September 2024, the Instagram Account "@nothingbutheels" posted a copy of "LOVE STORY 2" ("Infringing Love Story 2 Post". A true and correct copy of the Infringing Love Story 2 Post is attached to

the Complaint as **Exhibit 25**.

65. Beginning in or around September 2024, the Instagram Accounts "thenothingbutheels" and "blacktapeproject" posted a copy of "LOVE STORY 5" ("Infringing Love Story 5 Post"). A true and correct copy of the Infringing Love Story 5 Post is attached to the Complaint as **Exhibit 26**.

66. Beginning in or around September 2024, the Instagram Account "thenothingbutheels" posted a copy of "LA DOLCE VITA" ("Infringing LDV Post"). A true and correct copy of the Infringing LDV Post is attached to the Complaint as **Exhibit 27**.

67. Beginning in or around September 2024, the Instagram Account "thenothingbutheels" posted a copy of "BREAKUP" ("Infringing Breakup Post"). A true and correct copy of the Infringing Breakup Post is attached to the Complaint as **Exhibit 28**.

68. Beginning in or around September 2024, the Instagram Account "thenothingbutheels" posted a copy of "HOUSE ARREST" ("Infringing House Arrest Post"). A true and correct copy of the Infringing House Arrest Post is attached to the Complaint as **Exhibit 29**.

69. Beginning on or around September 10, 2024, Defendants ALVAREZ and BTP also posted to the Black Tape Project's website a distorted and modified copy of "SUPER SLIM" ("Infringing Super Slim Post") on the webpage describing the different tickets available for the Event. Specifically, Defendants distorted and modified "SUPER SLIM" to add scales and spikes to the red high-heeled shoe. Defendants also overlayed text that reads: "ALL FAMOUS Presents Nothing But Heels Halloween Edition Oct 30 Los Angeles Dinner, Soiree and the Red Room." The modified version of "SUPER SLIM" appears when a viewer drags the mouse pointer over the "Platinum Ticket" option, which costs $6,000. A true and correct copy of the Infringing Super Slim Post is attached to the complaint as **Exhibit 30**.

70. The Infringing Rooftop Posts, Infringing Step In Posts, Infringing Hollywood Hills Post, Infringing Banking Posts, Infringing Love Story 1 Posts, Infringing Love Story 2 Posts, Infringing Love Story 5 Post, Infringing LDV Post, Infringing Breakup Post, Infringing House Arrest Post and Infringing Super Slim Post are hereinafter referred to collectively as the "Infringing Ads."

71. Upon information and belief, Defendants or Defendants' agents control and operate all six Instagram accounts and the Black Tape Project's website and were responsible for each of the Infringing Ads.

72. Defendants' infringement is continuous and ongoing. Absent this lawsuit, Plaintiff knows of no way to effectively prevent Defendants from infringing Plaintiff's copyrighted work.

73. Plaintiff is entitled to seek actual damages and profits under 17 U.S.C. § 501 et seq. of the United States Copyright Act.

## COUNT I

## Direct Copyright Infringement

## (Against All Defendants)

74. The allegations contained in paragraphs 1-73 are hereby re-alleged as if fully set forth herein.

75. Plaintiff is the owner of the Copyrighted Photographs, which are original works of authorship.

76. Defendants, including any employee, agent, or other third party under the direct supervision or control of Defendants, copied and publicly displayed the constituent elements of the Copyrighted Photographs in order to advertise the Events for Defendants' commercial gain.

77. At no point in time did Plaintiff authorize, permit or consent to Defendants' copying, distribution, performance and/or display of the Copyrighted Photographs, expressly or otherwise.

78. As a result of the foregoing, Defendants violated Plaintiff's exclusive

12

Complaint – Demand for Jury Trial

right to:

(A) Reproduce the Copyrighted Photographs in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

(B) Distribute copies of the Copyrighted Photographs to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

(C) Display the Copyrighted Photographs publicly, by transmitting a copy of the Copyrighted Photographs by any device or process to the public, in violation of 17 U.S.C. §§ 106(5) and 501.

79. Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

80. As a result of Defendants' direct copyright infringement, Plaintiff has suffered, and will continue to suffer, damages in an amount to be established at trial.

81. As a result of Defendants' direct copyright infringement, Defendants have obtained profits they would not have realized but for their infringement of Plaintiff's Copyrighted Photographs. As such, Plaintiff is entitled to disgorgement of Defendants' profits attributable to the Infringing Ads, in an amount to be established at trial.

82. Defendants have committed direct copyright infringement with actual or constructive knowledge of Plaintiff's rights, such that said acts of direct copyright infringement were, and continue to be, willful, intentional, malicious, and/or taken with reckless disregard for Plaintiff's rights.

## COUNT II

### Vicarious and/or Contributory Copyright Infringement

### (Against All Defendants)

83. The allegations contained in paragraphs 1-82 are hereby re-alleged as if fully set forth herein.

13

Complaint – Demand for Jury Trial

84. The Defendants, including any employee, agent or other third party under the control and supervision of the Defendants, directly infringed Plaintiff's Copyrighted Photographs in the Infringing Ads advertising the Events.

85. The Defendants had knowledge of, and materially contributed to, induced and encouraged, the Infringing Ads.

86. Upon information and belief, each of the Defendants possesses the ability to control and/or supervise any individuals responsible for the Infringing Ads.

87. Defendants failed to exercise their right to stop the Infringing Ads.

88. Upon information and belief, Defendants ALVAREZ and BTP jointly own and operate The Black Tape Project and have a direct financial interest in the revenue and profit generated by The Black Tape Project and the Event, including the revenue and profit generated by the Infringing Ads.

89. Upon information and belief, Defendant ALL FAMOUS is sponsoring the Los Angeles Event and has a direct financial interest in the revenue and profit generated by the Los Angeles Event, including the revenue and profit generated by the Infringing Ads.

90. As a result of Defendants' acts of contributory and/or vicarious copyright infringement, Plaintiff has suffered, and will continue to suffer, damages in an amount to be established at trial.

91. As a result of Defendants' acts of contributory and/or vicarious copyright infringement, Defendants have obtained profits they would not have realized but for their infringement of Plaintiff's Copyrighted Photographs. As such, Plaintiff is entitled to disgorgement of Defendants' profits attributable to the Infringing Ads, in an amount to be established at trial.

92. Defendants have committed vicarious copyright infringement with actual or constructive knowledge of Plaintiff's rights, such that said acts of contributory and/or vicarious copyright infringement were, and continue to be,

willful, intentional, malicious, and/or taken with reckless disregard for Plaintiff's rights.

## COUNT III

## Moral Rights Infringement Under the Visual Artists Rights Act of 1990 (Against Defendants ALVAREZ and BTP)

93. The allegations contained in paragraphs 1-92 are hereby re-alleged as if fully set forth herein.

94. At all times relevant to this action, the Visual Artists Rights Act of 1990 ("VARA"), 28 U.S.C. § 106A, has been in effect.

95. Plaintiff is the author and owner of the photographs "Hollywood Hills" and "SUPER SLIM."

96. "Hollywood Hills" is a still photographic image produced in 2013 for exhibition purposes only and existing in a limited edition of 45 copies that were signed and consecutively numbered by the Plaintiff.

97. "SUPER SLIM" is a still photographic image produced in 2022 for exhibition purposes only and existing in a limited edition of 75 copies that were signed and consecutively numbered by the Plaintiff.

98. Plaintiff—a world-renowned fashion and fine art photographer—has at all times since the creation of "Hollywood Hills" and "SUPER SLIM" been the sole owner of both photographs.

99. "Hollywood Hills" and "SUPER SLIM" are works of recognized stature in that they are widely regarded as meritorious works of visual art by the artistic community.

100. Beginning on or around September 10, 2024, Defendants exhibited copies of "Hollywood Hills" and "SUPER SLIM" on Instagram posts and on the Black Tape Project's website for the purpose of advertising the Los Angeles Event.

101. Defendants at no time attributed authorship to Plaintiff in violation of

Plaintiff's moral right to attribution under VARA.

102. Beginning on or around September 10, 2024, Defendants also distorted and modified "SUPER SLIM" in violation of Plaintiff's moral right to integrity under VARA.

103. Specifically, Defendants modified the red high-heeled shoe to add scales and spikes and overlayed text that reads: "ALL FAMOUS Presents Nothing But Heels Halloween Edition Oct 30 Los Angeles Dinner, Soiree and the Red Room." The modified version of "SUPER SLIM" appears when a viewer drags the mouse pointer over the "Platinum Ticket" option, which costs $6,000.

104. In failing to attribute authorship of "Hollywood Hills" and "SUPER SLIM" to Plaintiff, and in distorting and modifying "SUPER SLIM," Defendants acted willfully, intentionally, and/or with gross negligence.

105. Defendants' failure to attribute authorship of "Hollywood Hills" and "SUPER SLIM," and their distortion and modification of "SUPER SLIM," is the proximate cause of the prejudice to Plaintiff's honor and reputation.

106. Defendants' failure to attribute authorship of "Hollywood Hills" and "SUPER SLIM," and their distortion and modification of "SUPER SLIM," occurred in a manner prejudicial to Plaintiff's honor and/or reputation and caused him substantial damage in amount to be determined at trial.

107. Plaintiff is therefore entitled to compensatory (actual and/or statutory) damages for the loss sustained as a result of Defendants' violation of Plaintiff's moral rights of attribution and integrity under VARA.

108. Plaintiff is further entitled to an award of attorney's fees and costs incurred as a result of Defendants' violation of Plaintiff's moral rights of attribution and integrity under VARA.

WHEREFORE, Plaintiff respectfully requests that the Court:

(A) Permanently enjoin Defendants from continuing to infringe Plaintiff's Copyrighted Photographs;

(B) Order that Defendants delete and permanently remove the infringing copies of the Copyrighted Photographs from each of the Infringing Ads and each of the Instagram accounts, as well as all computers, phones, or other electronic devices under Defendants' possession, custody or control;

(C) Award Plaintiff actual damages and profits of Defendants pursuant to 17 U.S.C. § 504(a) and (b);

(D) Award Plaintiff statutory damages pursuant to 17 U.S.C. § 504(c) for violation of Plaintiff's rights of attribution and integrity under VARA, 28 U.S.C. § 106A;

(E) Award Plaintiff attorney's fees and costs for violation of Plaintiff's rights of attribution and integrity under VARA, 28 U.S.C. § 106A; and

(F) Grant Plaintiff any other and further relief this Court deems just and proper.

DATED this 20th day of January, 2026.

**Law Offices of Lincoln Bandlow, PC**

*s/ Lincoln D. Bandlow*
Lincoln D. Bandlow
Attorney for Plaintiff
Tony Kelly

## **DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 20th day of January, 2026.

**Law Offices of Lincoln Bandlow, PC**

*s/ Lincoln D. Bandlow*
Lincoln D. Bandlow
Attorney for Plaintiff
Tony Kelly